IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| VAN CARTER, #768325 | § | |
| VS. | § | CIVIL ACTION NO. 9:07cv57 |
| G. CURRY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Van Carter, an inmate confined at the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on March 21, 2007. The Plaintiff complained about food poisoning, staph infections, life endangerment and retaliation. After reviewing the complaint, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was held on October 9, 2007. Regional Grievance Coordinator Chip Satterwhite, Warden Wesley Pratt and Nurse Barbara Hughes attended the hearing in order to answer any questions the Court may have concerning prison policies or the Plaintiff's records.

Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the Plaintiff. *Vernado*

*v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).  The Plaintiff gave the Court permission to review his prison records.

The Plaintiff is confined in the high security section of the Gib Lewis Unit.  He has a cell mate.  He testified that he has experienced a recurring staph infection, which has occurred eight times.  The problem started in November, 2006.  The infection manifests itself as boils.  He believes that the problem may have been caused by spoiled food.  A few other inmates in his housing area likewise developed staph infections, while others have not.

The Plaintiff next alleged that he has been the victim of harassment and retaliation as a result of filing grievances and this lawsuit.  He testified that inmates know information about him that is contained in his file.  He has heard inmates yelling his name.  Inmates have also yelled out things about his family.  He believes that the Defendants are criminally coercing other inmates to harass him.  He testified that he does not know of any specific guard releasing information about him, but he knows that other inmates are knowledgeable about information contained in his file.

Nurse Hughes testified under oath from the Plaintiff's medical records.  She noted that the Plaintiff's medical records contain three incidents of staph infections.  Antibiotics were prescribed and follow-up examinations revealed that the infections had healed.  Nurse Hughes testified that everyone has staph on their skin.  The chance of developing an infection decreases by careful observance of cleanliness, such as by washing hands.  Nurse Hughes testified that staph infections are not caused by food poisoning.

The Plaintiff was asked to explain why he sued the various Defendants.  In general, he alleged that the Defendants have been deliberately indifferent towards him.  He testified that he sued Assistant Warden G. Curry because he was responsible for the staff.

The Plaintiff stated that he sued Captain McFarlin with respect to a life endangerment study. He acknowledged that his claim that his life was in danger was investigated and could not be substantiated. The Plaintiff gave the Court permission to review various records submitted during the hearing. The records included an extensive file containing numerous life endangerment studies. In an Inter-Office Communication, dated November 9, 2006, from Lt. Putnam to Captain McFarlin, it was noted that the Plaintiff's claims were investigated and denied for lack of evidence. The Unit Classification Committee denied the Plaintiff's request for a transfer due to a lack of evidence.

Another Inter-Office Communication, dated August 9, 2007, was from Lt. DeLord to the Office of the Ombudsman. Lt. DeLord noted the Plaintiff's complained that officers were retaliating against him in response to his grievances. The Plaintiff, however, was unable to name or describe the officers. The Plaintiff told him that Warden Curry, Major Carter, Captain Moore, Captain McFarlin, Lt. Snipes, Lt. Reed, Sgt. Little and Sgt. Johnson had knowledge of this behavior and chose not to address the issue. Lt. DeLord stated that he interviewed everyone named in the complaint and that they all denied any wrong doing. Lt. DeLord found that there was no evidence or information to substantiate the allegations.

The Plaintiff's Classification Records reveal that the Unit Classification Committee has routinely considered the Plaintiff for complaints of life endangerment. He was transferred to the Lewis Unit from the McConnell Unit at the request of the McConnell Unit in August, 2006. A notation was made to refer him to the Psychiatric Department. On September 1, 2006, no action was taken on claims of life endangerment due to a lack of evidence to substantiate the claims. On October 31, 2006, no action was taken due to a lack of evidence. Similar results occurred on December 18, 2006, and February 9, 2007.

The Plaintiff testified that he sued Lt. McCaugh for an incident that occurred in either November or December, 2006. The Plaintiff was on his floor because he was weak from a staph infection. Lt. McCaugh told him to get off of the floor. He came into the cell. He stepped on the Plaintiff's hand while he was in the cell. The Plaintiff admitted that he was not injured. He also complained that Lt. McCaugh threatened him.

The Plaintiff testified that he sued Captain Tony Ducaucha for food poisoning. Captain Ducaucha was the kitchen captain.

The Plaintiff sued a number of people for threatening him, including Lt. Glen Sniper, Sgt. Hussey, Lt. William Haynes and Officer Douglas Moore.

The Plaintiff sued the following people for failing to take steps to protect him even though they were aware of threats made against him: Officer Eric Carrington, Officer Crystal Amos, Officer Leticcia McCray, Captain Preston McFarland, Officer Adam Little, Officer Robert Twine, Officer Natalie Hadnot, Officer Virginia Trimble, Officer Amber Sherman, Officer Raumond Spikes, Officer Tina Schoubrogic and Officer Monk Overshown. The Plaintiff characterized these officers as deliberately indifferent. He also included Officer Latashiar Humphrey in this group. He added that she filed two disciplinary cases against him.

Regional Grievance Coordinator Chip Satterwhite testified under oath that grievance records reveal that the Plaintiff has exhausted his claims against Warden Curry and Officer Humphrey. He did not exhaust his claims against anyone else.

In reviewing the Plaintiff's various claims, the Court initially notes that the Plaintiff generally alleged that the Defendants have been deliberately indifferent to his health and safety. With respect to the Plaintiff's complaints about the staph infections and boils, he would have a basis for a

potentially meritorious civil rights lawsuit if the Defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A plaintiff does not have a basis for a potentially meritorious civil rights lawsuit because medical treatment has been unsuccessful. *Johnson v. Treen*, 759 F.2d at 1238.

In the present case, the Plaintiff complained that he developed staph infections on eight occasions. The medical records reveal that medical personnel treated his infections with antibiotics

5

and that follow-up examinations found that the infections had healed. The medical records submitted during the *Spears* hearing confirmed that the staph infections reoccurred, but the infections were treated. The facts as alleged and developed do not support an inference that anyone ignored his medical condition or refused to treat him. The facts as alleged and developed do not support an inference of deliberate indifference to a serious medical need. The Plaintiff's medical claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about the cause of the staph infections. He suggested that the infections may have been caused by food poisoning. He noted that some people became sick while others did not become sick after eating food. Despite repeated questions by the Court, he could not identify which meal or what type of foods were spoiled. In order to state a civil rights claim cognizable under 42 U.S.C. § 1983, a plaintiff must allege facts to support his broad allegations. *See Vinson v. Heckmann*, 940 F.2d 114, 115 (5th Cir. 1991); *Wesson v. Oglesby*, 910 F.2d 278, 280 (5th Cir. 1990). Conclusory allegations are insufficient. *R.A.M. Al-Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). The Plaintiff has offered nothing other than conclusory allegations concerning the cause of his staph infection, including his claim that such infections were caused by spoiled food. Moreover, Nurse Hughes noted that staph infections are not caused by eating food. Similarly his claims about spoiled food and food poisoning were conclusory. Such claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact, thus they should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained that he was the victim of harassment and retaliation because he filed grievances and this lawsuit. To state a valid claim for retaliation under section 1983, a

prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must be more than a *de minimis* adverse act. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 596 (2006). In *Morris*, the Fifth Circuit held that a job transfer from the commissary to the kitchen was *de minimis*, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. *Id.* at 687.

In the present case, the Plaintiff testified that someone must have released information to other inmates because they called out his name and yelled about information that was in his file. He failed to identify anyone who released the information. He likewise failed to allege a sufficiently adverse retaliatory act. The retaliation claim is conclusory. The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that officers threatened him. Verbal harassment, without more, cannot amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that verbal abuse and requiring an inmate to beg for food did not provide a basis for an actionable claim under § 1983. "[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), *cert. denied*, 464 U.S. 998 (1983). *See also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation). The Plaintiff's complaints about threats are frivolous. Moreover, the Plaintiff's discussion of threats in the context of a retaliation claim does not rise to the level of an actionable retaliation claim due to the lack of a sufficiently adverse retaliatory act.

The Plaintiff also alleged that various officers were deliberately indifferent to his safety. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*,

511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A]n Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

In the present case, prison officials conducted numerous life endangerment studies. In each case, there was no evidence to support the Plaintiff's claim that his life was in danger. The Plaintiff does not have a basis for a deliberate indifference claim because he disagreed with the findings of the officials. Instead, in order to proceed on his claims, he must show that the Defendants had knowledge that he was facing a substantial risk of serious harm and that they were deliberately indifferent. There was no evidence that he faced a substantial risk of serious harm. The only facts he was able to present in support of his claim were vague allegations that he was threatened and that inmates called out his name or yelled out information in his file. Such facts do not give rise to an inference of a substantial risk of serious harm. The failure to protect claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained that Lt. McCaugh stepped on his hand. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged

wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10. The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

In the present case, the Plaintiff admitted that he was not injured when Lt. McCaugh stepped on his hand. The Plaintiff's complaint that Lt. McCaugh stepped on his hand fails to state a claim

10

upon which relief may be granted and is frivolous in that it lacks any basis in law and fact, thus it should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's discussion of his claims against Officer Humphrey also mentioned two disciplinary cases filed by her. A civil rights lawsuit is not the proper method of challenging disciplinary cases. The Plaintiff may not assert a due process claim in a 42 U.S.C. § 1983 action unless he first shows that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff did not show that he has been able to get his disciplinary cases reversed, expunged or otherwise declared invalid. The Plaintiff's complaints about the disciplinary cases fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. His disciplinary claims, like all of his other claims, should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's claims against Warden Curry should be dismissed for an additional reason. The Plaintiff testified that he sued Warden Curry because he is responsible for his staff. In order to successfully plead a cause of action in a civil rights case, the Plaintiff must enunciate a set of facts that illustrate the Defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Warden Curry did not participate in any of the alleged acts of wrongdoing. The only other way he could possibly be implicated in these claims is through his supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

Finally, the Court will briefly mention exhaustion of administrative remedies. Regional Grievance Coordinator Chip Satterwhite testified that his records show that the Plaintiff exhausted his administrative remedies only against Warden Curry and Officer Humphrey. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). This Court, however, may no longer dismiss prisoner civil rights lawsuits *sua sponte* for failure to exhaust administrative remedies. *Jones v. Bock*, 127 S.Ct. 910 (2007); *Carbe v. Lappin*, 492 F.3d 325, 327-28 (5th Cir. 2007). Nonetheless, the Plaintiff should be aware that if his claims had not otherwise been dismissed as frivolous, his unexhausted claims would likely have been dismissed for failure to exhaust pursuant to a motion to dismiss filed by the Defendants. The Plaintiff must exhaust both his Step 1 and 2 grievances on all of his claims before proceeding to file a lawsuit in this Court. It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The Plaintiff is free to file a petition for a writ of habeas corpus regarding his prison disciplinary cases and file a new civil rights lawsuit about the disciplinary cases if, and only if, he can show that the disciplinary cases were reversed on direct appeal, expunged by executive order,

declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **17** day of **October, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE